The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.

**FILED 2008 Jan 22 AM 11:36**
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 05-39734 |
| | ) | |
| Wapakoneta Machine Company, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO APPOINT JOHN R. GOSNELL AS AUTHORIZED REPRESENTATIVE

This case is before the court on a motion ("Motion") filed by John R. Gosnell ("Gosnell") to appoint Gosnell as authorized representative under 11 U.S.C. § 1114(b) and (d) to enforce his rights under the Bankruptcy Code as they relate to retiree benefits owed to him by Wapakoneta Machine Company ("Debtor" or "the Company"), [Doc. # 189] and the response of the Official Committee of Unsecured Creditors ("Creditors' Committee") [Doc. # 232] in which Debtor joins [Doc. # 234]. The court conducted a hearing on the Motion that was attended in person by Gosnell, counsel for Gosnell, counsel for the Creditors' Committee. Debtor's counsel attended the hearing by telephone. At the hearing, the parties stipulated to the facts on which the court should decide the Motion. The issue presented is whether an arrangement under which health benefits are provided by Debtor pursuant to its contract with only one individual employee for health benefits during his retirement constitutes a "plan, fund, or program" under § 1114(a). For the reasons that follow, the court concludes that it does and will grant the Motion.

## FACTUAL BACKGROUND

The parties either stipulated to or do not dispute the following facts. Gosnell was a shareholder, officer, director and employee of Debtor. He sold his stock in Debtor and retired from active participation and employment with Debtor pursuant to an Agreement for Purchase of Stock ("Agreement") dated November 27, 1996. [*See* Doc. # 189, Motion, Ex. A]. The Agreement is solely between Debtor and Gosnell; no other employee or retiree is a party to the Agreement. The Agreement provides, in pertinent part, as follows:

> As a retiree, Gosnell shall be entitled to participate in the Company pension plan, retiree life insurance plan, and entitled to the benefits afforded a retiree under the Company health insurance program. Gosnell's coverage under the retiree life insurance and retiree health insurance plans shall not be reduced below that coverage in effect on the date of this agreement.

[*Id.* at ¶ 3(f)].

Debtor's employee health plan that was in effect on November 27, 1996, provided that out-of-pocket expenses for a family in a calendar year was $1,340. [Hearing Ex. A]. This plan was in effect until September 1, 2001, when it was modified to provide, at least in part, for a reduction in retiree benefits. In July 2004, the health plan was terminated for all retirees.

In August 2001, before the employee health plan was modified, Debtor's President and Chief Operating Officer received a letter from Gosnell's attorney. The letter stated in pertinent part as follows:

> The provision [to continue to have health insurance furnished by Debtor] included that those benefits in existence at the time of John's retirement, shall not be reduced below that coverage in effect as of the date of the [A]greement. . . .
>
> At the present time, John and Joan pay approximately $1,340.00 annually in out-of-pocket medical expenses for the two of them, and all other medical expenses are covered by the plan of insurance which the company has. If this benefit changes with a new plan, then it seems as though John and Joan should seek reimbursement from The Wapakoneta Machine Co. for any amount they pay annually in excess of $1,340.00.
>
> Hopefully, you can review this matter with your insurance provider and let John know your thoughts on how this matter can be handled in an efficient and equitable manner.

[Hearing Ex. B]. Thereafter, notwithstanding the September 1, 2001, reduction in retiree benefits, Gosnell submitted requests for reimbursement of medical expenses exceeding $1,340 for both himself and his wife, and Debtor continued to reimburse such expenses until September 14, 2005, the date its Chapter 11 petition was filed. [*See* Hearing Ex. E].

On July 1, 2004, Debtor's President sent a letter "[t]o all Retirees," informing them that the

Company was in contract negotiations with the union, that its labor agreement was due to expire on July 28, 2004, and that the Company intended to discontinue health care coverage "for all retirees, both hourly and salaried, effective August 1, 2004." [Hearing Ex. C]. On July 6, 2004, Debtor's President sent a letter to Gosnell, along with a copy of the July 1 letter sent to all retirees, stating that "we recognize that the situation for you and Joan is different from the other retirees" and that "[w]e are working on several options right now, and we will be in touch as soon as we have something more definitive." [Hearing Ex. D].

From July 2004 until October 1, 2004, Debtor purchased a health insurance policy from Medical Mutual of Ohio for Gosnell's wife and paid the premiums for the policy. From July 2004 until December 1, 2004, Debtor maintained and paid the premiums for a health insurance policy through Benistar/Hartford for Gosnell. From December 1, 2004, through the date Debtor's Chapter 11 petition was filed, both Gosnell and his wife maintained health insurance through the State Teachers Retirement System and submitted requests for reimbursement to the Company and were reimbursed to the extent their expenses exceeded $1,340 per year. Debtor never sent a W-2 or 1099 form to Gosnell relating to this arrangement.

Gosnell was the only retiree covered under the above described arrangement for the provision of health care coverage. The parties stipulate that Debtor's President, Daniel Fischer, would testify that Gosnell continued to receive payments for reimbursement of health care expenses through the date of filing based on the Company's Agreement with Gosnell and that Gosnell would not have received such payments if there had been no Agreement. Finally, the parties stipulate that Gosnell's gross income for the twelve months preceding the filing of Debtor's Chapter 11 bankruptcy petition was less than $250,000 as required for application of 11 U.S.C. § 1114. *See* 11 U.S.C. § 1114(m).

## LAW AND ANALYSIS

Gosnell seeks to be appointed the authorized representative to enforce his rights under § 1114 as they relate to retiree benefits owed to him by Debtor. However, in order to be appointed an authorized representative, he must first establish that the retiree benefits at issue are paid under a "plan, fund, or program" as contemplated under § 1114(a). Borrowing from the definition of "employee welfare benefit plan" under the Employee Retirement Income Security Act ("ERISA") and from case law interpreting the terms "plan, fund, or program" under ERISA, Debtor and the Unsecured Creditors Committee argue that since the Agreement covers only Gosnell rather than a class of beneficiaries, it is not a "plan, fund, or program" under § 1114. Instead, they contend that Gosnell's health benefit claims under the Agreement are simply claims for the remaining portion of the purchase price of his equity interest in Debtor. Because the court finds these arguments unpersuasive and further finds that the arrangement at issue is a "plan, fund,

3

or program" under § 1114(a), Gosnell's Motion will be granted.

Section 1114(a) provides as follows:

> For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

There is no dispute that Gosnell, a retired employee, is entitled under his Agreement with Debtor to receive payments for the purpose of providing or reimbursing payments for himself and his wife for medical, surgical, or hospital care benefits. Although the provision for health care benefits for Gosnell appears in the Agreement for Purchase of Stock, the Agreement clearly states that he is entitled to such benefits "[a]s a retiree. . . ." There is also no dispute that Debtor "maintained or established in whole or in part" the arrangement providing payments to Gosnell for health care benefits. The only question is whether Gosnell is entitled to the payments under a "plan, fund, or program" or, in other words, whether the health care benefits provision in the Agreement constitutes a "plan, fund, or program."

The Bankruptcy Code does not define "plan, fund, or program." *In re Certified Air Techs., Inc.*, 300 B.R. 355, 370 (Bankr. C.D. Cal. 2003); *In re New York Trap Rock Corp.*, 126 B.R. 19, 22 (Bankr. S.D.N.Y. 1991). The Creditors' Committee relies on both *Certified Air Technologies, Inc.,* and *New York Trap Rock Corporation* in arguing that the court should refer to ERISA in defining the terms. *See In re Certified Air Techs., Inc.*, 300 B.R. at 370-71; *In re New York Trap Rock Corp.*, 126 B.R. at 22 ("Because 11 U.S.C. § 1114 does not define the words "plan, fund, or program" reference should be made to the Federal legislation which protects employees' benefit rights, namely, . . . ERISA"). Because ERISA defines "employee welfare benefit plan" using the plural terms of "participants or their beneficiaries," 29 U.S.C. §1002((1), and ERISA case law cited by the Creditors' Committee states that a "plan, fund, or program" is established if a reasonable person can ascertain, among other things, "a class of beneficiaries," *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982), the Creditors' Committee contends that a "plan, fund, or program" under § 1114 requires the participation of more than one employee. Since Gosnell is the only employee to whom his Agreement with Debtor applies, the Creditors' Committee argues that the Agreement does not constitute a "plan, fund, or program."

The court finds the argument of the Creditors' Committee flawed in several respects. First, in arguing that an ERISA "plan, fund, or program" must include more than one participant, the Creditors' Committee relies solely on the use of the plural words "participants" and "beneficiaries" in the ERISA

4

statute and in caselaw interpreting ERISA. This argument ignores the basic rule of statutory construction - "words importing the plural include the singular." 1 U.S.C. § 1. The court is aware of, and the Creditors' Committee cites, nothing in the ERISA statute limiting a "plan, fund, or program" to an arrangement involving more than one person. Indeed, there is ample authority to the contrary. *See, e.g., Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1372-73, 1376 (7th Cir.1997), *abrogated on other grounds* (noting that the Secretary of Labor indicated that an ERISA plan can cover only a single employee and finding that the "status as an ERISA plan does not evaporate just because the Agreement is a contract between [the plaintiff] and the company"); *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 297 (4th Cir.1993) ("We are not aware of any requirement that a plan must cover more than one employee in order to be controlled by ERISA."); *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir.1991) (plan not excluded from ERISA coverage because it only applies to a single employee); *Kyro v. Gen. Prod. Corp.*, No. 04-74145, 2005 WL 1802088, *4 (E.D. Mich. July 28, 2005) (finding "the fact that the Severance Agreement applies only to [one individual] does not mean it cannot be an ERISA plan").

Also, both *Certified Air Technologies, Inc.*, and *New York Trap Rock Corporation* predate the Supreme Court's opinion in *Howard Delivery Service, Inc. v. Zurich American Insurance Co.*, 547 U.S. 651, 126 S. Ct. 2105 (2006). In that case, an insurance company filed a claim for unpaid workers' compensation premiums, asserting that they qualified as "contributions to an employee benefit plan" entitled to priority under 11 U.S.C. § 507(a)(5). *Id.*, 126 S. Ct. at 2110. Noting that the Bankruptcy Code does not define "employee benefit plan" and that federal courts have questioned whether ERISA is appropriately used to fill in blanks in a Bankruptcy Code provision, the Supreme Court rejected the suggestion that it borrow the definition contained in ERISA. *Id.*, 126 S. Ct. at 2112-13. The Court decided to "follow the lead" of an earlier decision in noting that "'[h]ere and there in the Bankruptcy Code Congress has included specific directions that establish the significance for bankruptcy law of a term used elsewhere in the federal statutes.'" *Id.,* 126 S. Ct. at 2113 (citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 219, 116 S. Ct. 2106 (1996)). Because no such directions are contained in § 507(a)(5), the Court declined to borrow a definition from "a statute designed without bankruptcy in mind" and instead considered the "essential character of workers' compensation regimes." *Id.*

Similarly, § 1114 contains no specific directions establishing the significance of the terms "plan, fund, or program" as used in the ERISA statutes. Under *Howard Delivery Service, Inc.,* simply importing an ERISA definition into the Bankruptcy Code's provision is not appropriate. *See In re Exide Technologies*, 378 B.R. 762, 768 n.7 (Bankr. D. Del. 2007). Moreover, as the Supreme Court has noted, "the terms

5

'employee benefit plan' and 'plan' are defined only tautologically in the statute," thus, providing little guidance as to their meaning. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8 (1987).

In determining whether the Agreement at issue constitutes a "plan, fund, or program" under § 1114(a), the court will follow the direction provided in *Howard Delivery Service, Inc.,* and will consider the "essential character" of the arrangement under which Gosnell received health benefits. Under the Agreement, Debtor had an ongoing responsibility to provide Gosnell with the same benefits provided under the Company's health insurance program in place on the date of the Agreement. In order to fulfill that duty, Debtor purchased health insurance for Gosnell and his wife for a period of time and, later, reimbursed Gosnell for costs he incurred in purchasing health insurance. In addition, Gosnell periodically submitted requests for payments reimbursing him for medical expenses exceeding $1,340, the maximum out-of-pocket expenses for a family in a calendar year under the Company's health insurance program at the time of the Agreement, which expenses were paid by Debtor until the date of filing its Chapter 11 petition. The court finds this ongoing arrangement maintained by Debtor in order to administer the benefits under the Agreement with Gosnell constitutes a "plan, fund, or program" under § 1114(a).

Gosnell having established that the retiree benefits at issue are paid under a "plan, fund, or program" as contemplated under § 1114(a), the court finds it appropriate to appoint him to serve as the authorized representative under § 1114(d), which provides as follows:[1]

> The court, upon a motion by any party in interest, and after notice and a hearing, shall appoint a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate, to serve as the authorized representative, under this section, of those persons receiving any retiree benefits not covered by a collective bargaining agreement.

Gosnell is the only "retired employee" receiving benefits under the Agreement. The court will, therefore, appoint him to be the authorized representative of both himself and his wife, the only "persons receiving retiree benefits" under this Agreement.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Motion [Doc. # 189] be, and hereby is, **GRANTED**. John R. Gosnell is appointed the authorized representative of persons receiving retiree benefits under the Agreement in

---

[1] Section 1114(d) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005. Because Plaintiff's bankruptcy case was filed before the effective date of the Act, the pre-BAPCPA version of this subsection applies. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

6

05-39734-maw    Doc 463    FILED 01/18/08    ENTERED 01/22/08 11:36:10    Page 6 of 7

accordance with 11 U.S.C. § 1114(d).